**Nos. 25-1049, 25-1272**

IN THE

# United States Court of Appeals
# for the Third Circuit

———————

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

and

NOKIA OF AMERICA CORP.,
*Intervenor-Appellant*,

OCCIDENTAL CHEMICAL CORP.,
*Intervenor-Appellant*,

vs.

ALDEN LEEDS INC., ET AL.,
*Defendants-Appellees*,

———————

*On Appeal from the United States District Court
for the District of New Jersey*

———————

### REPLY BRIEF OF INTERVENOR-APPELLANT
### NOKIA OF AMERICA CORPORATION

———————

MICHAEL D. LICHTENSTEIN
MARK S. HEINZELMANN
THOMAS E. MESEVAGE
ZACHARY L. BERLINER
LOWENSTEIN SANDLER LLP
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500

*Counsel for Intervenor-Appellant
Nokia of America Corporation*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.......................................................................... iii

INTRODUCTION ........................................................................................1

ARGUMENT ...............................................................................................3

I.    APPELLEES' ABUNDANT CONCESSIONS MANDATE REVERSAL OF THE DISTRICT COURT'S APPROVAL OF THE CONSENT DECREE. ...............................................................3

    A.    Appellees Concede Critical Facts. ...............................................3

        1.    The Basis of Settlement Is an Outsourced Allocation Unratified by Any Government Declarant. ...............................................................3

        2.    Uncertainty Pervades the Allocation and Its Results. ...............................................................4

        3.    The Allocator's Tiering of Similarly Situated Allocation Parties Relies on an Indefensible Mathematical Precision. ..............................................5

        4.    The Government Uncritically Adopted the Allocator's Tiering. ...............................................5

        5.    The Share Calculations and Tiering Were Shown to Be Arbitrary. ...............................................5

    B.    Given Appellees' Concessions, the District Court Committed Compounded Abuses of Discretion. .......................6

        1.    The District Court's Failure to Address Dr. Plancich's Expert Opinion Was an Abuse of Discretion. ...............................................................6

        2.    The District Court Abused Its Discretion When It Concluded that the Fine Line Between Tiers 2 and 3 Was Well Considered. ...............................................7

3.      The District Court's Unfettered Deference to the Government Was an Abuse of Discretion. ........................7

II.    THE GOVERNMENT'S PRETEXTUAL CLAIM OF "RATIONAL BASIS," NOT RAISED BELOW AND SO FORFEITED, IS AMPLY CONTRADICTED BY THE RECORD. .................................................................................7

        A.      The Government's Embrace of False Precision Cannot Remedy the Settlement Flaws. ......................................8

        B.      The Allocator's PCB Share Calculations Are a False Basis of Distinguishment, as Proven by Dr. Plancich's Unrebutted Declaration. ...............................................8

        C.      The Effort to Discredit Dr. Plancich's Expert Opinion, Not Raised Below, Amounts to Mere Mischaracterization. ..............9

        D.      The So-Called 1% Threshold Is Irrelevant If the Parties Cannot Be Reliably Distinguished Across that Threshold. .......10

III.   A SETTLEMENT OF CLAIMS FOR A $3.68 Billion CERCLA CLEANUP MUST COMPORT WITH THE U.S. CONSTITUTION. .......................................................................10

        A.      The Government Wrongly Asserts that Any Class-of-One Objection to the Settlement Is Barred in the CERCLA Enforcement Context. ...............................................11

        B.      The Allocation Key Measures Provide the Basis of Comparison For the Discernment of Similarly Situated Parties. .........................................................................12

        C.      The Government's Intended Disparate Treatment of Nokia Is Manifest. ...................................................................13

IV.    THE APPELLEES' PROCEDURAL, FORFEITURE, AND RIPENESS ARGUMENTS LACK MERIT. ......................................13

CONCLUSION ...........................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Columbia Falls Aluminum Co., LLC v. Atl. Richfield Co.*,
No. CV 18-131-M-DWM, 2021 WL 3769886 (D. Mont. Aug. 25,
2021), *aff'd,* No. 21-36042, 2023 WL 1281669 (9th Cir. Jan. 31,
2023) ...........................................................................................................4

*Danihel v. Off. of President of U.S.*,
616 F. App'x 467 (3d Cir. 2015) .........................................................11

*El Paso Nat. Gas Co., LLC v. United States*,
390 F. Supp. 3d 1025 (D. Ariz. 2019) ..................................................4

*Engquist v. Oregon Department of Agriculture*,
553 U.S. 591, 607 (2008)....................................................................11

*Greco v. Senchak*,
627 F. App'x 146 (3d Cir. 2015) .........................................................11

*Mann v. Brenner*,
375 F. App'x 232 (3d Cir. 2010) .........................................................11

*PG Publ'g Co. v. Aichele*,
705 F.3d 91 (3d Cir. 2013) .................................................................13

*Spiker v. Whittaker*,
553 F. App'x 275 (3d Cir. 2014) .........................................................11

*United States v. Alcan Aluminum*,
25 F.3d 1174 (3d Cir. 1994) ...............................................................14

## <u>INTRODUCTION</u>

No principle of judicial deference can salvage this settlement, because it rests on a differentiation between Nokia and the Settling Defendants that the Government neither examined nor defended, and which the District Court implicitly approved without addressing unrebutted expert evidence establishing its falsehood.

The material facts are not in dispute. The Government delegated the allocation underlying this settlement to a private contractor, restricted its own access to critical information, and then adopted—without independent analysis—the contractor's numerical scoring and tiering of the allocation parties, even though the contractor expressly acknowledged that he could not, with any acceptable degree of certainty, distinguish among similarly situated parties. No Government declarant attested to the contractor's accuracy in differentiating Nokia from the Settling Defendants. And when Nokia's expert, Dr. Stephanie Plancich, submitted unrebutted empirical analysis demonstrating that those distinctions were irrational, the District Court did not address her testimony at all.

This Court has held that a CERCLA settlement cannot be approved absent a rational basis for the underlying apportionment of liability, and that judicial review must be meaningful, not perfunctory. Here, the District Court affirmed a settlor/non-settlor divide that the Government itself never validated and ignored unrebutted

expert evidence demonstrating that the settlement distinctions were unfounded. These are textbook abuses of discretion.

The Government's newly asserted "rational basis" on appeal only accentuates the problem. That rationale was not presented to the District Court, conflicts with the contract allocator's admissions about uncertainty, is unsupported by any Government declarant in the record, and is directly refuted by Dr. Plancich's unrebutted testimony. A post hoc justification cannot cure the absence of a contemporaneous, evidence-supported basis for the distinctions on which this settlement rests.

This is a straightforward appeal. The record does not demonstrate that the Government had a rational basis for treating Nokia differently from similarly situated Settling Defendants, and the District Court ignored unrebutted evidence demonstrating the fallacy of the purported differentiation.

Reversal is warranted.

## ARGUMENT

I.  **APPELLEES' ABUNDANT CONCESSIONS MANDATE REVERSAL OF THE DISTRICT COURT'S APPROVAL OF THE CONSENT DECREE.**

Appellees' concessions, below and now on appeal, leave no serious doubt that this settlement cannot survive even modest scrutiny. Their concessions are not minor or technical, but strike at the heart of the Government's burden and expose a settlement edifice constructed on a demonstrated false distinguishment of Nokia and Settling Defendants.

### A.  Appellees Concede Critical Facts.

#### 1.  *The Basis of Settlement Is an Outsourced Allocation Unratified by Any Government Declarant.*

Appellees concede that: (a) the Government did not conduct the allocation, rather outsourcing it to a third party, Mr. David Batson of AlterEcho, *see* U.S.Ans.Br.at.13; ECF.No.289.at.7; *see also* Nokia.Opening.Br. § III.A; (b) the Government, by intent, did not fully participate in the allocation and lacked access to material aspects of it, *see* U.S.Ans.Br.at.15; ECF.No.289-2.at.75; *see also* Nokia.Opening.Br.at.14; (c) the Government's allocation expert later declined to endorse the allocation results, citing these access limitations, *see* ECF.No.288-8 ¶ 8; and (d) not one Government declarant verified the allocation results or claimed that they present a rational basis for the settlement, the standard for judicial approval, *see* Nokia.Opening.Br.at.41. Under such circumstances, the outsourced, unverified

allocation results were due no deference in the District Court and likewise merit no deference on appeal.[1]

### 2.    *Uncertainty Pervades the Allocation and Its Results.*

Appellees also concede that the allocation is marred by pervasive uncertainty: (a) the historical data was too weak to produce reliable share calculations, *see* U.S.Ans.Br.at.26; ECF.No.289.at.36; (b) Mr. Batson himself deemed a numerical ranking of the allocation parties "impossible" with acceptable certainty, ECF.No.289.at.36; and (c) neither he nor the Government attempted to measure the extent of the uncertainty, *see* Nokia.Opening.Br.at.20–21, 24, 40. When the allocator and the Government both refuse to quantify uncertainty, there is no judicial basis for confidence in the resulting distinctions.

---

[1]    The failure of the Government and its allocation expert to verify Mr. Batson's results is particularly alarming given that two previous CERCLA allocations by Mr. Batson were rejected by federal courts as flawed and unreliable. *See Columbia Falls Aluminum Co., LLC v. Atl. Richfield Co*., No. CV 18-131-M-DWM, 2021 WL 3769886, at *47–49 (D. Mont. Aug. 25, 2021), *aff'd,* No. 21-36042, 2023 WL 1281669 (9th Cir. Jan. 31, 2023) (rejecting Mr. Batson's allocation methodology and its application and finding that his ultimate recommendation was neither reasonable nor relevant); *El Paso Nat. Gas Co., LLC v. United States*, 390 F. Supp. 3d 1025, 1050–52 (D. Ariz. 2019) (finding Mr. Batson's allocation "seriously flawed" and "quite unreliable").

### 3.    *The Allocator's Tiering of Similarly Situated Allocation Parties Relies on an Indefensible Mathematical Precision.*

Appellees concede that despite admitting he could not reliably rank the parties, Mr. Batson nonetheless sorted the 73 non-OxyChem entities into four tiers (Tiers 2 through 5) declaring these categories "acceptably certain." ECF.No.289.at.36. To do this, he relied on a supposed allocation accuracy of 14 ten-thousandths of a percent (14 in a million) to group Nokia in Tier 2 and eight Settling Defendants in Tier 3. *See* Nokia.Opening.Br.at.31–33.

No Appellee has attempted to justify the settlement's reliance on such spurious and indefensible mathematical precision.

### 4.    *The Government Uncritically Adopted the Allocator's Tiering.*

Appellees concede that the Government could have evaluated Mr. Batson's tiers and his claim of "acceptable certainty," but simply did not. *See* Nokia.Opening.Br.at.26–27. The tiers thus rest entirely on the allocator's say-so, never validated by the administrative agency responsible for the consent decree.

### 5.    *The Share Calculations and Tiering Were Shown to Be Arbitrary.*

Because Appellees chose not to respond to Dr. Plancich's expert declaration in the District Court, her findings stand unrebutted: (a) Mr. Batson's share calculations are uncertain; (b) the Government cannot rationally distinguish by share calculation Nokia from the six Settling Defendants said to account for over 99% of

polychlorinated biphenyl ("PCB") contributions; (c) Tiers 2 and 3 cannot truly be differentiated; and (d) the supposed mathematical precision underlying the settlement is a fallacy. *See* Nokia.Opening.Br.at.33–35; ECF.No.307-2. Appellees' silence on these matters speaks volumes. Appellees also concede that the District Court ignored Dr. Plancich's expert analysis entirely, evidenced by the fact that her testimony is not mentioned in the District's Court's Opinion or Order.

**B.    Given Appellees' Concessions, the District Court Committed Compounded Abuses of Discretion.**

**1.    *The District Court's Failure to Address Dr. Plancich's Expert Opinion Was an Abuse of Discretion.***

Dr. Plancich's unrebutted declaration directly challenged the substantive fairness of the settlement, but the District Court ignored it.[2] The court's opinion does not mention Dr. Plancich's testimony or Nokia's related contentions that the settlement's apportionment of liability is arbitrary. A court abuses its discretion when it ignores unrebutted, legally significant evidence. *See* Nokia.Opening.Br.at.57–58 (collecting cases).

---

[2]    The Government seeks to excuse this serious abuse of discretion by the District Court with a striking mischaracterization of Nokia's contentions below, claiming that "Nokia did not object to entry of the decree or contend that the declaration provided a basis for denying it." U.S.Ans.Br.at.65. Any cursory review of Nokia's briefing below shows that the Government's statement is false. ECF.No.307.at.17–24.

### 2. The District Court Abused Its Discretion When It Concluded that the Fine Line Between Tiers 2 and 3 Was Well Considered.

The District Court compounded its error by concluding that the "fine line" between Tiers 2 and 3 was "well-considered" despite the facts that: (a) the Government never evaluated the distinction; (b) no declarant vouched for it; and (c) Appellees never rebutted Dr. Plancich. The Government's newly invented "rational basis" on appeal only underscores that none existed below. *See infra* Section II.

### 3. The District Court's Unfettered Deference to the Government Was an Abuse of Discretion.

The District Court's deference to "governmental authority," without demanding any demonstration that the settlor/non-settlor distinction was rational, was legal error. Its failure to grapple with unrebutted evidence invalidating the allocation demands reversal. *See* Nokia.Opening.Br.at.57–58 (collecting cases).

## II. THE GOVERNMENT'S PRETEXTUAL CLAIM OF "RATIONAL BASIS," NOT RAISED BELOW AND SO FORFEITED, IS AMPLY CONTRADICTED BY THE RECORD.

The Government's new assertion on appeal, that Nokia can be distinguished from the Settling Defendants based on PCB mass estimates exceeding an arbitrary 1% threshold, only underscores the settlement's irrationality. No Government declarant mentioned this supposed rationale in the District Court, and nothing in the record supports it; to the contrary, the record thoroughly refutes it.

A.    **The Government's Embrace of False Precision Cannot Remedy the Settlement Flaws.**

The Government now leans heavily on a numerical precision that the allocator, Mr. Batson, himself rejected. He cautioned in his Final Report that "lack of and variability of available data" for the 92 facilities in the allocation "created a sufficient uncertainty in the determination of allocation shares and substantially affect the credibility of the relative numerical share calculations among and between similarly ranked individual Allocation Parties." ECF.No.289.at.36. In short, Mr. Batson knew his own numerical estimates, though they looked highly accurate, were neither reliable nor precise.

As Mr. Batson admitted, it was "impossible for the allocation process to produce a numerical ranking of the Allocation Parties that can identify with any acceptable level of certainty the relative responsibility of similarly situated parties." *Id*. The Government never disputes this. Instead, it now embraces the same unreliable estimations Mr. Batson warned against. The problem is simple—when the inputs lack precision, the outputs cannot magically supply it.

B.    **The Allocator's PCB Share Calculations Are a False Basis of Distinguishment, as Proven by Dr. Plancich's Unrebutted Declaration.**

The Government's flawed reliance on PCB rankings is also amply established by Dr. Plancich's unrebutted testimony.  Her analysis specifically establishes that the imprecision of estimated PCB mass inputs materially affects the PCB share

calculation outputs such that no PCB-linked Allocation Parties can be ranked or tiered with certainty. *See* ECF.No.307-2 at Exhs. 6, 9; Nokia.Opening.Br.at.52–53. From this, she concludes that "the underlying variability of the input data . . . affect[s] the outcome of the allocation and robustness of any resulting estimates of scores, relative ranks and Tiers . . . ." ECF.No.307-2 ¶ 3. Yet the Government now rests its rationale entirely on those unreliable, arbitrary results.

### C. The Effort to Discredit Dr. Plancich's Expert Opinion, Not Raised Below, Amounts to Mere Mischaracterization.

Unable to engage with the substance of Dr. Plancich's work, the Government tries to dismiss it as "fundamentally an evidentiary objection that AlterEcho already considered and rejected." U.S.Ans.Br.at.65. But her Declaration lays out a clear, methodical approach to assessing uncertainty, precisely the kind of diligence the Government (or Mr. Batson) should have pursued.

She explains that evaluating uncertainty is central to assessing any model, and she applied the accepted method of sensitivity testing to determine whether alternative, reasonable assumptions about key inputs materially affect the results. ECF.No.307-2 ¶¶ 1–4, 15. They do dramatically.

The Government not only mischaracterizes her analysis but also fails to confront the consequences of its own silence below. Having submitted no rebuttal, Appellees effectively conceded the validity of her findings.

**D.     The So-Called 1% Threshold Is Irrelevant If the Parties Cannot Be Reliably Distinguished Across that Threshold.**

The Government now claims it is "rational to draw a distinction between those with relative shares under 1% from those over 1%." U.S.Ans.Br.at.63. But any threshold, whether 1%, 0.5%, or a fraction of a percent, depends on the ability to reliably distinguish the parties on either side of it. As Dr. Plancich established, the allocation fails to meet that most basic requirement.

And the Government's reliance on the Alternative Methodology (one that uses an orphan share allocation methodology that flouts decades of Agency practice) does nothing to solve the Government's problem. It simply inflates the appearance of separation without resolving the underlying uncertainty. ECF.No.307-2 ¶ 42.n. Appellees likewise have never rebutted this point.

**III.    A SETTLEMENT OF CLAIMS FOR A $3.68 BILLION CERCLA CLEANUP MUST COMPORT WITH THE U.S. CONSTITUTION.**

Given the stakes, this Court should reach Nokia's equal protection argument. Substantive fairness under CERCLA already incorporates the equal protection concepts that similarly situated parties may not be treated differently without a rational basis. Here, that principle was plainly violated.

**A.    The Government Wrongly Asserts that Any Class-of-One Objection to the Settlement Is Barred in the CERCLA Enforcement Context.**

The Government insists that class-of-one principles do not apply to CERCLA settlements, relying entirely on *Engquist v. Oregon Department of Agriculture*, a case holding that a class-of-one theory does not apply in the context of *public at-will employment*. 553 U.S. 591, 607 (2008) ("In concluding that the class-of-one theory of equal protection has no application in the public employment context—and that is all we decide . . . ."). The Government ignores that substantive fairness already requires rationally apportioning liability in pursuit of CERCLA settlements, a standard grounded in equality before the law. The Government's so-called "individualized decisions made in CERCLA settlements" undoubtedly are subject to constitutional constraints.[3]

Further, nothing in the record suggests that the Government engaged in any particular "individual decision-making" (the gravamen of *Engquist*'s public at-will

---

[3]    Courts in this Circuit have applied the class-of-one theory in various enforcement contexts. *See, e.g.*, *Spiker v. Whittaker*, 553 F. App'x 275, 280–81 (3d Cir. 2014) (government's decision to arrest probationer for failing to register as a sex offender); *Greco v. Senchak*, 627 F. App'x 146, 149–50 (3d Cir. 2015) (agency's enforcement of property tax laws); *Danihel v. Off. of President of U.S.*, 616 F. App'x 467, 470 (3d Cir. 2015) (government discretion to pursue eminent domain); *Mann v. Brenner*, 375 F. App'x 232, 238 (3d Cir. 2010) (raising class-of-one theory sua sponte to evaluate equal protection challenge although not "explicitly" pled as a "'class of one' equal protection claim").

employment) as to Nokia. This settlement is based on the allocation tiering and was presented to the District Court as such. *See* ECF.No.288-1.at.26; ECF.No.288-5 ¶¶ 48, 57. The rationality of the settlement thus hinges on Mr. Batson's unsupported claim of certainty as to his tiering, as blindly adopted by the Government. Even the Government's belated assertion of a rational basis for distinguishing Nokia, founded on PCB share calculations, relies on Mr. Batson's credibility-impaired estimations, not any "discretionary, individualized" Government decision. The Government simply outsourced the allocation to a third-party allocator and left to him the "individual decision-making," scoring, ranking, and tiering of the parties. Nothing vested the allocator with "governmental authority." He was not deputized as a member of the Executive Branch.

### B. The Allocation Key Measures Provide the Basis of Comparison For the Discernment of Similarly Situated Parties.

The Government argues that there is no valid standard for determining whether parties are similarly situated. But the allocation itself supplies that standard: the Key Measures—chemical-specific mass estimates adjusted for toxicity—are the very metrics used in the allocation to group and compare parties. *See* Nokia.Opening.Br.at.23, 26–27.

The fact that the input data was too imprecise to rationally distinguish Nokia from Tier 3 Settling Defendants does not negate the existence of the standard; it

simply shows that the allocator's methodology was too crude to support the fine-grained distinctions the Government now seeks to draw.

### C.    The Government's Intended Disparate Treatment of Nokia Is Manifest.

Nokia was designated a "work party" from the outset, based solely on the allocation results. In March 2022, EPA informed Nokia that it had "identified two classes of parties, cashout parties and work parties," and that Nokia was the latter. The Government then settled with the Tier 3 Settling Defendants for cash, releasing them from as much as $3.68 billion in claims, while preserving full enforcement authority against Nokia.

Under a class-of-one theory, that is intentional disparate treatment. No improper motive is required. *See PG Publ'g Co. v. Aichele*, 705 F.3d 91, 114–15 (3d Cir. 2013) (comparing the distinctive elements of class-of-one and selective enforcement theories of equal protection claims).

## IV.    THE APPELLEES' PROCEDURAL, FORFEITURE, AND RIPENESS ARGUMENTS LACK MERIT.

The Government's reliance on Nokia's joinder in a public comment letter is misplaced. CERCLA does not require participation in the public-comment process, and any comments made there do not restrict an intervening party's right to challenge the consent decree during the judicial review. Nokia properly intervened below, and the District Court was obliged to consider the full record before it—including

Nokia's evidence. *See United States v. Alcan Aluminum*, 25 F.3d 1174, 1180–81, 1186 n.17 (3d Cir. 1994) (rejecting contention that CERCLA's public comment provision constrains a party's ability to intervene and challenge a Consent Decree when standard for intervention is met).

Appellees' forfeiture argument fares no better. Nokia's position has been consistent: arbitrary allocation distinctions yield arbitrary settlement values, and a settlement premised on such arbitrariness cannot satisfy CERCLA's substantive fairness standard. *See* ECF.No.366; ECF.No.379; Nokia.Opening.Br.at.58–60.

Finally, the Settling Defendants' vague suggestion that the Government may negotiate with Nokia at some point, *see* SPG.Ans.Br.at.80, has no bearing on the ripeness of Nokia's objections. The distinctions that underpin the settlement are either rational or they are not. On this record, they are not.

## CONCLUSION

At bottom, this settlement—and the consent decree that memorializes it—rests on distinctions no one verified, on an indefensible pretense of mathematical precision, and post-hoc rationales the Government never presented below and that the record squarely refutes. A decree of this magnitude cannot stand on bare assertions, particularly where unrebutted expert testimony shows that the very distinction used to separate Nokia from similarly situated Settling Defendants lacks rational basis. By disregarding that evidence, accepting unsupported distinctions,

-15-

and deferring when rigorous scrutiny was required, the District Court abused its discretion. CERCLA demands substantive fairness. The Constitution demands equal treatment. This settlement provides neither. Reversal is warranted and necessary.

Respectfully submitted,

Dated:  January 21, 2026

*s/ Michael D. Lichtenstein*
Michael D. Lichtenstein
Mark S. Heinzelmann
Thomas E. Mesevage
Zachary L. Berliner
LOWENSTEIN SANDLER LLP
One Lowenstein Drive
Roseland, NJ 07068
(973) 597-2500
*Counsel for Intervenor-Appellant*
*Nokia of America Corporation*

## COMBINED CERTIFICATIONS

### CERTIFICATION OF BAR MEMBERSHIP

The undersigned hereby certifies pursuant to L.A.R. 28.3(d) and 46.1 that the lead attorney whose name appears on the foregoing brief was duly admitted to, and is presently a member in good standing of, the Bar of this Court.

### CERTIFICATION OF WORD COUNT

The undersigned hereby certifies that the foregoing brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B)(ii) because, excluding the parts exempted by Fed. R. App. P. 32(f), the brief contains 2,922 words.

### CERTIFICATION OF COMPLIANCE WITH TYPEFACE AND TYPE-STYLE REQUIREMENTS

The undersigned hereby certifies that the foregoing brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5)–(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font in the text and footnotes.

### CERTIFICATION THAT E-BRIEF AND HARD COPY ARE IDENTICAL

The undersigned hereby certifies that, pursuant to L.A.R. 31.1(c), the text of the electronically filed brief is identical to the text in the paper copies.

## CERTIFICATION THAT BRIEF
## HAS BEEN VIRUS CHECKED

The undersigned hereby certifies that, pursuant to L.A.R. 31.1(c), the electronic file containing the brief was scanned for viruses using Microsoft Defender version 1.431.327.0, and no virus was detected.

## CERTIFICATION OF SERVICE

The undersigned hereby certifies that: (1) on January 21, 2026, a true and correct copy of the foregoing brief was filed with the Clerk using the appellate CM/ECF system; and (2) all counsel of record are registered CM/ECF Filing Users, and service will be accomplished by the CM/ECF system.


Dated:  January 21, 2026          By:    *s/ Michael D. Lichtenstein*
                                          Michael D. Lichtenstein